Stortini Holdings is; who invests in its funds; what assets it has; its familiarity with the securities laws and; its ability to discharge its fiduciary duties as lead plaintiff. *See In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 732-33 (S.D. Ind. 2000) ("bare certification form" failed to demonstrate adequacy of proposed lead plaintiffs); *Piven v. Skyes Enters., Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (rejecting proposed lead plaintiff based on their failure to provide sufficient information to the court). RS Holdings Group has further failed to provide information to the Court regarding the relationship, if any, among Wertin, Dumm, and Robino Stortini Holdings.

This Court should not entrust control of this high profile litigation with substantial damages at stake to an entity that fails to provide basic information about itself and how it will oversee this litigation. *See Cendant*, 264 F.3d at 265 ("[A] court might conclude that the movant with the largest losses could not surmount the threshold adequacy inquiry if it lacked legal experience or sophistication."). At the very least, this Court should require RS Holdings Group to provide detailed information about Robino Stortini Holdings and whether it functions as an asset manager as well as information about its investments in Star Gas securities and its relationship, if any, to Wertin and Dumm. *See Cendant* 264 F.3d at 262 ("[a]ny time the question appears genuinely contestable, we think that a district court would be well within its discretion…in seeking further information if it deems the original submissions to be an inadequate basis for an informed decision").

### 2. Robino Stortini Holdings Is An Investment Manager And May Not Have Standing to Assert Claims On Behalf Of The Class

The PSLRA directs the Court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

friends. As such, it would be Robino Stortini Holdings' *clients* who sustained losses on their investments in Star Gas securities, and thus have the standing to sue - not Robino Stortini Holdings.

Without standing to bring claims on behalf of the Class, Robino Stortini Holdings, and ultimately, RS Holdings Group, will be subject to unique defenses at the class certification stage. The PSLRA is clear that persons subject to unique defenses should not be appointed lead plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (stating that movant that "is subject to unique defenses that render such plaintiff incapable of adequately representing the class" cannot be the most adequate plaintiff)[2]. Accordingly, RS Holdings Group's application for lead plaintiff should be rejected.

### 3. RS Holdings Group Appears To Be A Lawyer-Driven Aggregate

The joint application of Robino Stortini Holdings, Wertin and Dumm reflects a total combined loss of approximately $1.79 million. The certifications of each proposed lead plaintiff show that Robino Stortini Holdings suffered losses of approximately $749,300, while Wertin and Dumm had estimated losses of $806,220 and $241,463, respectively. Based upon RS Holdings Group's failure to provide information as to the relationship between the Group members, it appears that RS Holdings Group is a lawyer-driven aggregate comprised of an investment manager and two unrelated individuals in an attempt to secure the lead plaintiff position, and, therefore, lead counsel status. The

---

[2] While some courts have permitted "investment managers" to serve as lead plaintiffs, those courts generally have required showings that such money managers qualify as a single "person" under the PSLRA. *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (Connecticut Retirement Plans and Trust Funds adequate lead plaintiff because it had demonstrated that legally it functioned as a single investor); *Sakhrani v. Brightpoint*, 78 F. Supp. 2d 845, 846-47 (S.D. Ind. 1999) (stating that a group of "affiliated pension funds or mutual funds under common management" would satisfy requirements of PSLRA). Here, RS Holdings Group and Robino Stortini Holdings have not made such a showing.

joint application fails to provide any insight into how Robino Stortini Holdings, Wertin and Dumm came together to file a joint application, what pre-existing relationship there may have been with respect to these applications; and how the individuals and entity would work together to represent the best interests of the class. Accordingly, RS Holdings Group does not satisfy the requirements of the most adequate lead plaintiff. *See Razorfish*, 143 F. Supp. 2d at 308-09 (refusing to appoint group comprised of different kinds of entities and individuals with no independent existence or prior relationship as lead plaintiff because appointment would encourage lawyers to direct the litigation); *see also Rozenboom*, 2004 WL 816440, at *4 (explaining that some courts refuse to aggregate "unrelated class members on the ground that [aggregated groups] are more likely to abdicate their responsibility to coordinate the litigation to their attorneys, in contravention of the PSLRA's goal to eliminate lawyer-driven litigation."); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003) (allowing lawyers to group unrelated plaintiffs to aggregate their financial claims would encourage lawyer-driven litigation, which the PSLRA sought to prevent).

### B. The Star Gas Group And The Lando Group Are Improper "Groups"

Although the PSLRA provides a specific procedure whereby litigants may attempt to rebut the presumption of most adequate lead plaintiff, the court is nonetheless under a specific obligation to appoint as lead plaintiff the class member or members most capable of adequately representing the interests of the Class Members. *See* 15 U.S.C. § 78u-4(3)(B)(iii)(II). Independent of any class member's objection, the court must therefore put a proposed aggregation to the test of whether, on its face, such an aggregation serves the goals and principles of the PSLRA. *See Rozenboom*, 2004 WL 816440, at *3 (aside

from largest financial interest, the court must determine whether the plaintiff satisfies the other statutory requirements) (citations omitted); *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 584 (N.D. Cal. 1999) (stating the court must consider whether the aggregated group can function as an effective monitor of class counsel's performance). It is well established that the principal legislative purpose of the PSLRA was to prevent lawyer-driven litigation. *See Rozenboom,* 2004 WL 816440, at *2 (stating "[t]he PSLRA was intended to prevent 'lawyer-driven' litigation, and to ensure that parties with significant financial interests in the litigation 'will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel.'") (citations omitted); *see also Donnkenny*, 171 F.R.D. at 157-58. Therefore, "[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *Donnkenny*, 171 F.R.D. at 157. Rather, "[t]o allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation." *Id.* at 158.

Here, the formation of the Star Gas Group and the Lando Groups are transparent attempts by their counsel to cobble together a large enough group of investors to qualify as lead plaintiffs, in order to achieve appointment as lead counsel. A crucial defect in the application of both the Star Gas and Lando Groups for appointment of lead plaintiff is each Group's failure to demonstrate that it will speak with one voice and effectively manage this litigation. To enable the Court to assess whether the proposed group is capable of performing the lead plaintiff function, it should provide appropriate information about its members, structure, and intended functioning. *See Rozenboom*, 2004 WL 816440, at *4 (stating courts have required groups seeking appointment as lead

plaintiff to "explain and justify its composition and structure.")(citations omitted). Such information should include descriptions of its members, including any preexisting relationship among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation. If the proposed group fails to explain and justify its compensation and structure to the Court's satisfaction, its Motion should be denied. *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal 1999) (citation omitted). Both Groups in particular fail to meet this standard. At page 2 of its Memorandum of Law, the Star Gas Group states that it consists of "a group of investors." There is no indication in the Memorandum or supporting Declaration of the relationship between the four members of the Group, or even if they knew each other at all prior to the formation of the Group. The Lando Group's Memorandum and supporting Declaration are silent as to the nature of the relationship between the six members of the Group or whether the Group members knew each other prior to the formation of the Group. Neither Group provides the Court with any indication of how it would be structured so as to effectively manage this litigation without undue influence from counsel.

Moreover, the deadline for filing lead plaintiff motions was December 20, 2004. Thus, the lead plaintiff motion filed by the Lando Group, on December 21, 2004, was untimely, and on that basis alone, the Court should exclude the Lando Group from lead plaintiff consideration. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) (lead plaintiff must have "either filed the complaint or made a motion in response to a notice" required by § 78u-4(a)(3)(A)(i)(II) (setting sixty day time limit for filing a motion to be named lead

plaintiff)); *see also In re Crayfish Litig.*, 2001 WL 1160745 at *5 (S.D.N.Y. Sep. 28, 2001) (holding that the sixty day period the [PSLRA] provides for submissions of motions is "mandatory."); *In re Microstrategy, Inc. Sec. Litig.*, 110 F. Supp.2d 427, 439-40 (E.D. Va. 2000) (finding movant's lead plaintiff application failed procedurally because the movant did not satisfy a procedural predicate required for the statutory presumption because it did not file a motion to be named lead plaintiff within the sixty day time period); *In re Texlon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 8181 (N.D. Ohio 1999) (stating "[t]he PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action. The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed *after* the sixty (60) day window has closed.").

Counsel for the Star Gas and Lando Groups have not offered any reason for appointing an aggregation of unrelated investors as lead plaintiffs, other than the assertion that both groups possess the largest financial stake in the litigation. For the reasons stated above, the Motions of both the Star Gas Group and the Lando Group to serve as lead plaintiff in this litigation should be denied.

### C. Rosner's Losses Are Less Than Originally Reported

Mr. Rosner grossly overstated his damages because he utilized an incorrect mean trading price when calculating his losses. Under the Exchange Act, losses are calculated as the difference between the purchase or sale price paid or received and the mean trading price over a 90-day period beginning after the close of the class period. *See* 15 U.S.C. § 78u-4(e)(1) (requiring damages to be based upon the mean trading price for the 90 days

15

after the correction was revealed, which period has yet to expire). The "mean" or average closing price for Star Gas common stock during the period October 19, 2004 through December 16, 2004, was approximately $6.31 per share. *See* attached as Exhibit B- a true and accurate copy of Star Gas' common stock price chart for the period October 19, 2004 through December 16, 2004. When calculating Mr. Rosner's losses based on the mean closing price for Star Gas common stock of $6.31, Mr. Rosner's losses would amount to approximately $385,530.71, and not $590,000, as Mr. Rosner originally claimed in his Memorandum[3]. Due to Mr. Rosner's failure to correctly calculate his losses, he overstated his claimed damages by approximately $204,000. Thus, Mr. Rosner fails to satisfy the most adequate plaintiff requirements under the PSLRA, 15 U.S.C. 78u-4(a)(3)(B)(iii)(I) (requiring movant to have the "largest financial interest in the relief sought by the class . . ."), and the Voisins have a larger financial stake and are capable of providing fair and adequate class representation.

### D. The Remaining Movants Fail To Satisfy The Requirement Of The PSLRA For Appointment As Lead Plaintiff

The losses alleged by lead plaintiff movants Norman Dombrowsky, Benjamin Rogers, Roman Sarwas, Robert and Delores Vandiver, Charles and June Noll, William Cole, George and Gladys Atteberry, Star Gas Investor Group, the Franklin Family, and James White are significantly lower than the Voisins. These individuals and groups fail to satisfy the most adequate plaintiff requirements under the PSLRA, 15 U.S.C. 78u-4(a)(3)(B)(iii)(I) (requiring movant to have the "largest financial interest in the relief

---

[3] Noteworthy also is Mr. Rosner's incorrect statement of his total purchase price of Star Gas shares. In his Memorandum of Law, Mr. Rosner states that his total purchase price of Star Gas shares during the Class Period was $637,684.00. Based on a careful examination of his transactions in Star Gas, as contained in his certification, Mr. Rosner's actual purchase price of the Star Gas shares at issue equals $602,648.62. Thus, Mr. Rosner overstated his purchase price by $35,035.39.

sought by the class . . ."), and a competing movant, particularly the Voisins, has a larger financial stake and is capable of providing fair and adequate class representation. Therefore, each of their motions to serve as lead plaintiff must fail.

## CONCLUSION

For all the foregoing reasons, the Voisins respectfully request that this court: (1) consolidate all related actions; (2) appoint the Voisins lead plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and (3) approve its selection as Berman DeValerio Pease Tabacco Burt & Pucillo as lead counsel and Clendenen & Shea LLC as liaison counsel for the Class.

Dated: January 10, 2005        Respectfully submitted,

**CLENDENEN & SHEA, LLC**

_____
William H. Clendenen, Jr. (FED BAR # ct04261)
Kevin Shea (FED BAR # ct13781)
400 Orange Street
P.O. Box 30
New Haven, Connecticut 06502
(203) 787-2847

**Proposed Liaison Counsel**

**BERMAN DEVALERIO PEASE
TABACCO BURT & PUCILLO**
Jeffrey C. Block
Leslie R. Stern
Colleen M. Conners
One Liberty Square
Boston, Massachusetts 02109
(617) 542-8300

**Attorneys for Proposed Lead Plaintiffs**

# JOINT DECLARATION IN SUPPORT OF THE VOISIN PLAINTIFF GROUP'S MOTION TO CONSOLIDATE ACTIONS, TO BE APPOINTED LEAD PLAINTIFFS AND FOR APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

This joint declaration is made by Stuart J. Voisin and Helene K. Netter on behalf of the Stuart J. Voisin Revocable Living Trust, the Helene K. Netter Revocable Living Trust, Nancy Voisin, Jordana Bregman and Isaiah Bregman (collectively the "Voisins") Plaintiff Group. This declaration is made in support of the Voisin Plaintiff Group's Motion To Consolidate Actions, To Be Appointed Lead Plaintiffs And For Approval Of Lead Plaintiffs' Selection Of Lead Counsel And Liaison Counsel. We have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

1. We are members of the Class of shareholders in the above captioned litigation. We have agreed to serve as lead plaintiff in this litigation as part of the Voisin Group, represented by Berman, DeValerio, Pease, Tabacco Burt & Pucillo ("Berman DeValerio").

2. We are husband and wife. I, Stuart J. Voisin, am Nancy Voisin's father. Helene K. Netter is the grandmother of Jordana Bregman and Isaiah Bregman.

3. I, Stuart J. Voisin, have been involved in the stock brokerage business for 46 years. I am a former member of the Board of Governors of the National Association of Securities Dealers ("NASD") and was an arbitrator for both the New York Stock Exchange and the NASD. I was also a member of the NASD.

4. I, Helene K. Netter, am an attorney and was previously a partner at Bondy & Schloss, LLP and subsequently at Schoeman, Marsh & Updike. I was also a partner in a stock brokerage firm where I oversaw the firm's compliance department, among other matters.

5. Nancy Voisin is an attorney and is currently the Associate General Counsel of E-Trade Bank in Virginia. Ms. Voisin graduated from Columbia Law School and was admitted to practice in 1987.

6. We have discussed the prosecution of this lawsuit among all of us and we are committed to vigorously prosecuting the case as lead plaintiffs. As close family members, we are in regular contact with each other.

7. We retained Berman DeValerio as counsel because of their substantial experience litigating securities class actions on behalf of shareholders. We believe that the best interests of the Class are best served by having one lead counsel and Berman DeValerio should be appointed lead counsel and Clendenen & Shea, LLC should be appointed liaison counsel.

8. We participated in a number of conference calls with our counsel, Jeffrey C. Block, a partner at Berman DeValerio. During these calls, we discussed our responsibilities as lead plaintiffs and our duties in monitoring the litigation, including holding regular meetings and maintaining regular contact with counsel. We also discussed that, as lead plaintiffs, we are fiduciaries of the Class and are responsible for acting in the best interests of the Class throughout this litigation. We then agreed to retain Berman DeValerio as our sole lead counsel for this case.

9. We understand our role and responsibilities as the lead plaintiffs and are fully prepared to fulfill them.

10. Based on our discussion with Attorney Block, and our discussions with Nancy Voisin, we believe that the three lead plaintiffs will be able to exercise joint decision-making and work together in this case to actively and efficiently supervise counsel and monitor the litigation.

11. We have negotiated a favorable fee agreement, which is less than the percentage normally awarded in securities class actions. We believe that this fee agreement is favorable to the Class.

Signed under the pains and penalties of perjury this 6th day of January, 2005.

_____       _____
Stuart J. Voisin                                              Helene K. Netter

EXHIBIT B

```
<HELP> for explanation.                                          N108 Equity HP
Screen Printed
Comp/CLOSE/PRICE                                                 Page  1 / 1
STAR GAS PARTNERS L.P.    (SGU    US)      PRICE 6.80       N    $   DELAYED
                                                       HI 7.20       ON 11/10/04
Range 10/19/04 to 12/16/04   Period D Daily           AVE 6.3105     VL 1178421
                         USD     Market U Trade       LOW 5.25       ON 11/19/04
```

|   | DATE  | PRICE | VOLUME  |   | DATE  | PRICE | VOLUME  |   | DATE  | PRICE | VOLUME  |
|---|-------|-------|---------|---|-------|-------|---------|---|-------|-------|---------|
| F |       |       |         | F | 11/26 | 6.00  | 539600  | F | 11/ 5 | 6.88  | 3577100 |
| T | 12/16 | 6.75  | 2029200 | T | 11/25 |       |         | T | 11/ 4 | 6.51  | 1233400 |
| W | 12/15 | 6.51  | 781000  | W | 11/24 | 5.85  | 778300  | W | 11/ 3 | 6.05  | 804000  |
| T | 12/14 | 6.32  | 1451300 | T | 11/23 | 5.74  | 825500  | T | 11/ 2 | 6.48  | 660400  |
| M | 12/13 | 5.98  | 617000  | M | 11/22 | 5.55  | 882200  | M | 11/ 1 | 6.72  | 573900  |
| F | 12/10 | 5.78  | 307500  | F | 11/19 | L5.25 | 2667200 | F | 10/29 | 6.99  | 613300  |
| T | 12/ 9 | 5.80  | 317200  | T | 11/18 | 5.96  | 4402800 | T | 10/28 | 7.01  | 1011000 |
| W | 12/ 8 | 5.89  | 387800  | W | 11/17 | 6.68  | 438500  | W | 10/27 | 6.75  | 1002300 |
| T | 12/ 7 | 5.90  | 589700  | T | 11/16 | 6.95  | 400500  | T | 10/26 | 7.00  | 1466600 |
| M | 12/ 6 | 5.85  | 427300  | M | 11/15 | 7.00  | 389300  | M | 10/25 | 6.85  | 1735000 |
| F | 12/ 3 | 5.85  | 247000  | F | 11/12 | 7.08  | 254400  | F | 10/22 | 6.43  | 2204000 |
| T | 12/ 2 | 5.75  | 394400  | T | 11/11 | 7.11  | 312500  | T | 10/21 | 5.71  | 1552800 |
| W | 12/ 1 | 5.91  | 413100  | W | 11/10 | H7.20 | 900100  | W | 10/20 | 5.30  | 3597400 |
| T | 11/30 | 5.92  | 388300  | T | 11/ 9 | 7.08  | 651900  | T | 10/19 | 5.76  | 6184900 |
| M | 11/29 | 5.94  | 679100  | M | 11/ 8 | 7.00  | 804900  |   |       |       |         |

Australia 61 2 9777 8600      Brazil 5511 3048 4500     Europe 44 20 7330 7500          Germany 49 69 920410
Hong Kong 852 2977 6000  Japan 81 3 3201 8900  Singapore 65 6212 1000  U.S. 1 212 318 2000  Copyright 2004 Bloomberg L.P.
                                                                                         G718-429-0 17-Dec-04 10:10:41

Bloomberg

# CERTIFICATE OF SERVICE

I, Toni DiMeo-Zavras, hereby certify that true copies of the Memorandum Of Law In Further Support Of The Stuart J. Voisin Revocable Living Trust, The Helene K. Netter Revocable Living Trust, Nancy Voisin, Jordana Bregman And Isaiah Bregman's Motion For Appointment As Lead Plaintiff And In Opposition To All Other Lead Plaintiff Motions was served upon all counsel listed on the attached service list, via United States Mail, First Class, Postage Pre-Paid.

Date: January 16, 2005

Toni DiMeo-Zavras